# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10-cr-20413-STA |
| ) | |
| ROMILUS CARAWAY, ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL

Before the Court is Defendant Romilus Caraway's Motion for a New Trial Based on Newly Discovered Evidence (D.E. # 63), filed on August 22, 2011. The Government initially filed a Notice under the Jencks Act (D.E. # 61) on August 17, 2011, and Defendant also filed a Response to the Government's Notice under the Jencks Act (D.E. # 63) on August 22, 2011. The Government filed a Response to Defendant's Request for a New Trial (D.E. # 64) on August 30, 2011. The Court conducted a hearing on September 27, 2011, and ruled on the Motion from the bench. For the reasons set forth below and the reasons set forth during the hearing, Defendant's Motion for a New Trial is **GRANTED**.

## BACKGROUND

Defendant was indicted for one count of the knowing possession of a handgun by a felon under 18 U.S.C. § 922(g) on December 21, 2010. During the first day of trial, the Government presented the testimony of Ms. Latasha Johnson. (Notice Under the Jencks Act at 1.) The next day, the Government voluntarily disclosed Jencks Act material to the defense on one of the

1

Government's witnesses before calling him to the stand. (*Id.* at 1-2.) Defense counsel subsequently requested all Jencks Act material for all government witnesses, which the Government provided and then advised that all Jencks Act material had been given to Defendant.[1] (*Id.*) The jury found the defendant guilty of the sole count in the indictment on August 9, 2011. About a week after trial ended, Government counsel found a transcript of the grand jury testimony of Ms. Johnson which he had not disclosed to defense counsel at trial.[2] (*Id.* at 2.) Government counsel notified Defense counsel of the grand jury transcript on August 16, 2011. (*Id.*)

Defense counsel then filed a Response to Government's Notice Under the Jencks Act and a Motion for New Trial on Newly Discovered Evidence (D.E. # 63) on August 22, 2011. The newly discovered evidence consists of Ms. Johnson's grand jury transcript. (Def.'s Mot. for New Trial on Newly Discovered Evid. at 1.) Defense counsel "requested Jencks Act material for all of the Government's witnesses when the Government voluntarily disclosed to defense counsel Jencks Act material on Government witness Ronald Williams before" his testimony. (*Id.* at 2.) At that time, AUSA Biggers was required to disclose all Jencks material to defense

---

[1] On January 21, 2011, defense counsel sent a formal request for Rule 16 discovery, including impeachment evidence and Brady materials, to the Assistant United States Attorney originally assigned to the case, Ms. Michelle Kimbril-Parks. (Def's Resp. to Gov't's Notice Under the Jencks Act at 1.) However, as the Jencks Act "only require[s] disclosure in time for effective use at trial," AUSA Kimbril-Parks was not necessarily required to disclose all Jencks Act material upon receipt of defense counsel's January 2011 letter. *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988). Indeed, defendants are entitled to a witness's prior statements under the Jencks Act only after the witness has testified. *United States v. Short*, 671 F.2d 178, 185 (6th Cir. 1982).

[2] While AUSA Kimbril-Parks presented Ms. Johnson's testimony to the grand jury, AUSA David Biggers presented the Government's case against Defendant at trial.

counsel. When the Government brought Ms. Johnson's grand jury transcript to defense counsel's attention after trial, defense counsel moved this court to determine three issues: whether the Government's failure to disclose the grand jury transcript was intentional or merely inadvertent or negligent, whether the nondisclosure was prejudicial to the defendant, and whether the grand jury transcript constituted Brady material and whether its nondisclosure was a Brady violation. (*Id.* at 2-3.) Defense counsel closed with the assertion that his Sixth Amendment right to a fair trial had been violated by the Government's failure to turn over Jencks Act material. (*Id.* at 3-4.)

In response, the Government pointed out that it had "mistakenly advised that all Jencks Act material had been provided" at trial. (Gov't's Resp. to Req. for New Trial at 2.) The Government continued by noting that "the defendant concede[d] that the Government's failure to disclose this material was inadvertent." (*Id.* at 4.) Thus, both parties agreed that "th[e] Court may apply whatever remedy it deems just . . . ." (*Id.*) After asserting that a finding of harmless error was appropriate in this case, the Government indicated that the grand jury transcript did not "contain exculpatory information that would have benefitted [Defendant] at trial." (*Id.*) The Government focused its arguments on the contents of the grand jury transcript, asserting that they were inadmissible hearsay and thus that their unavailability to defense counsel at trial was not prejudicial. (*Id.* at 4-6.)

At the hearing, the Court asked the parties to confine their arguments to whether the nondisclosure of the grand jury transcript was prejudicial or harmless error under the Jencks Act. Defense counsel argued that Defendant was deprived of a fair trial due to the nondisclosure of Ms. Johnson's grand jury testimony. Defense counsel focused his argument on Ms. Johnson's

3

conversation with Mr. Maurice Carter regarding the ownership and possession of the gun (Grand Jury Tr. at 7-8) and Ms. Johnson's assertion that she saw Defendant put the gun in the stash spot (*Id.* at 4).

Government counsel responded by stating that neither party disputed that the nondisclosure was accidental. He argued that how Defendant came to possess the gun was not exculpatory and that Defendant was not prejudiced by the Government's failure to turn over the grand jury transcript containing this testimony. He also stated that, if the Court confined its analysis to whether the grand jury transcript contained meaningful impeachment material, the nondisclosure of the grand jury transcript would not be prejudicial. Government counsel also stated that Defendant was allowed much leeway during cross examination at trial and often asked questions beyond the scope of direct without the Government's objection.

In reply, defense counsel reiterated that the grand jury transcript should have been provided by the Government on the second day of trial when defense counsel requested it, and the failure to do so was prejudicial error. Government counsel's reply to these arguments included the Court's ability to find the error harmless and mentioned that the grand jury transcript could not be used to impeach Ms. Johnson, and that its disclosure would have been used merely for discovery purposes.

## **LAW**

The grand jury transcript at issue here is unquestionably material covered by the Jencks Act.[3] When reviewing a potential Jencks Act violation, a district court follows a two-step

---

[3] *United States v. Driver*, No. 09-20549, 2011 WL 761496, at *3 (E.D. Mich. Feb. 25, 2011).

analysis. First, the court determines whether the nondisclosure was intentional or inadvertent.[4] Second, if the nondisclosure was inadvertent, the court conducts a harmless error analysis to determine whether "the failure to furnish the statements caused any actual prejudice to the defense in the context of all the circumstances of the trial."[5] While the court *may* find that the nondisclosure was harmless error, it is certainly not required to do so.[6] Whether an error is harmless or prejudicial "depends on whether the error is one that might reasonably be thought to have had 'substantial and injurious effect or influence in determining the jury verdict'"[7] or whether substantive material for cross-examination would have been available to defense counsel with the statements.[8] The critical issue is whether the failure to furnish the statement itself caused any actual prejudice to the defense in the context of all the circumstances of the trial.[9]

Importantly, "courts must not 'speculate' on whether Jencks Act statements could have been used effectively at trial."[10] Additionally, when evaluating whether an error is prejudicial, a

---

[4] *See United States v. DeFranco*, 30 F.3d 664, 667 (6th Cir. 1994).

[5] *United States v. Pope*, 574 F.2d 320, 326 (6th Cir. 1978).

[6] *See id.* (emphasis added).

[7] *United States v. Susskind*, 4 F.3d 1400, 1406 (6th Cir. 1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

[8] *See United States v. Dye*, 508 F.2d 1226, 1235 (6th Cir. 1974). A defendant is actually prejudiced if he can demonstrate that "there is a reasonable probability that . . . the result of the proceeding would have been different." *Ross v. Pineda*, No. 10-391, 2011 WL 1337102, at *6 (S.D. Ohio Apr. 7, 2011).

[9] *United States v. Webster*, 914 F.2d 259, at *3 (6th Cir. 1990).

[10] *Id.* (quoting *Clancy v. United States*, 365 U.S. 312, 316 (1961)).

court need not apply "flat contradiction" as the only test of inconsistency.[11] Other ways that statements can be inconsistent include "[t]he omission from . . . reports of facts related at the trial, . . . a contrast in emphasis upon the same facts, [or] even a different order of treatment" of those facts.[12] Such inconsistent statements are all possible grounds for impeachment. Moreover, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[13] When doing so, a court may address errors which "affect substantive rights . . . even though" those errors are not brought to the court's attention by the parties.[14]

## ANALYSIS

On September 27, 2011, the Court issued a ruling in open court granting Defendant a new trial. Consistent with that ruling, the Court now states as follows. The Court initially finds that the Government's failure to disclose Ms. Johnson's grand jury transcript was inadvertent and not intentional. Next, the Court declines to rule on the Brady issue raised by defense counsel, as no finding regarding the nondisclosure of Brady materials is necessary at this time. The Court next turns to the main issued presented at the hearing: whether the nondisclosure of the grand jury transcript prejudiced Defendant to the extent that a new trial is necessary.

The Court finds Ms. Johnson to be a key witness against Defendant, and she presented critical testimony regarding Defendant's possession of the gun. The substantial inconsistencies

---

[11] *Clancy*, 365 U.S. at 316.

[12] *Id.* (quotation omitted).

[13] Fed. R. Crim. P. 33(a).

[14] Fed. R. Crim. P. 52(b).

6

between her trial testimony and grand jury testimony are concerning. Ms. Johnson's trial testimony differs from her grand jury testimony in several particular instances. First, Ms. Johnson said at trial that she "s[aw] the gun in [Defendant's] back pocket."[15] But she never mentioned the gun being in his pocket during her grand jury testimony. Second, Ms. Johnson testified before the grand jury that she saw Mr. Maurice Carter inside the police car and that, after his release, he stated that the gun was his. However, at trial, Ms. Johnson testified that she did not know Mr. Carter, and neither defense counsel nor Government counsel pursued that area of testimony. Accordingly, Ms. Johnson's trial and grand jury testimony were substantially different, especially in relation to Defendant's possession of the gun, and these inconsistent statements were ripe for impeachment with the information in the grand jury transcript. Thus, the inadvertent nondisclosure of her grand jury testimony resulted in actual prejudice to Defendant.

While AUSA Biggers averred that some of the inconsistent statements were inadmissible hearsay and would not have been presented at trial even if he had disclosed Ms. Johnson's grand jury transcript, the Court declines to speculate on how the transcript and its contents could have been used by defense counsel at trial. It is enough that Ms. Johnson's grand jury transcript contained substantive material for cross-examination to which defense counsel was not privy during trial. Moreover, although the testimony addressed by defense counsel at the hearing and the testimony upon which the Court has based its holding differ, the Court's independent evaluation of additional portions of Ms. Johnson's testimony is permissible under the Federal

---

[15] (Trial Tr. of Latasha Johnson at 6-7.)

Rules of Criminal Procedure.[16] The fact remains that Ms. Johnson's statements are inconsistent under the definitions of inconsistency identified by the *Clancy* court, and defense counsel's inability to review them during trial resulted in actual prejudice to Defendant.

## **CONCLUSION**

Thus, for the foregoing reasons and in the interest of justice, Defendant's Motion for a New Trial is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 30, 2011.

---

[16] *See* Fed. R. Crim. P. 52(b) (noting that a court may consider errors affecting substantive rights even though the parties do not present them to the court).